RACHEL E. KAUFMAN (Cal. Bar No. 259353)
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881
rachel@kaufmanpa.com

*Attorney for Plaintiff and the Putative Classes*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JESANIEL MARRERO,** individually and on behalf of all others similarly situated, <br><br> *Plaintiff,* <br><br> v. <br><br> **P.B.R. MANAGEMENT INC.,** a Delaware corporation, and **JON ROOFEIIM,** <br><br> *Defendants.* | Case No. <br><br> **CLASS ACTION** <br><br> **DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

### Preliminary Statement

1. Plaintiff Jesaniel Marrero ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to

widespread public outrage about the proliferation of automated and prerecorded telephone calls, which, Congress found, were rightly regarded as in invasion of privacy. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. Plaintiff alleges that P.B.R. Management, Inc. ("PBR Management"), at the direction of Jon Roofeiim ("Roofeiim") made pre-recorded telemarketing calls to Plaintiff and other putative class members without their consent.

3. Notably, Plaintiff has previously sued PBR Management for prior TCPA violations arising from the identical conduct – the making of unsolicited pre-recorded telemarketing calls – but PBR Management has failed to correct its conduct, making its violations in this instance willful and knowing.

4. Plaintiff and putative class members never consented to receive these calls. Because prerecorded voice marketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal robocalls from or on behalf of the Defendants.

5. A class action is the best means of obtaining redress for the Defendants' wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

Class Action Complaint
Case No.

## Parties

6. Plaintiff Jesaniel Marrero resides in Pennsylvania.

7. Defendant P.B.R. Management, Inc. is a corporation with its principal place of business in California within this District.

8. Defendant Jon Roofeiim is an individual residing in California within this District who owns and operates PBR Management.

## Jurisdiction & Venue

9. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

10. The Court has personal jurisdiction over the Defendants because they engaged in telemarketing conduct from this District.

11. Venue is proper under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls were made from this District.

## TCPA Background

12. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice

-3-

Class Action Complaint
Case No.

… to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

13. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

14. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

15. While "prior express consent" is required for all automated and prerecorded calls, in 2013, the FCC required "prior express written consent" for all such telemarketing calls to wireless numbers and residential lines.  Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls

that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

16. "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12).

17. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

18. By 2003, telemarketers were calling 104 million Americans every day, abetted by the proliferation of new and more powerful autodialing technology. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

19. Unfortunately, the problems Congress identified when it enacted the TCPA have grown only worse in recent years.

20. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July

-5-

Class Action Complaint
Case No.

22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

21. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

22. Even more recently, a technology provider combating robocalls warned that nearly half of all calls to cell phones in 2019 will be fraudulent. *Press Release, First Orion, Nearly 50% of U.S. Mobile Traffic Will Be Scam Calls by 2019* (Sept. 12, 2018), https://www.prnewswire.com/news-releases/nearly-50-of-us-mobile-traffic-will-be-scam-calls-by-2019-300711028.html/.

23. Additionally, the TCPA outlaws unsolicited telemarketing (robocalls or otherwise) to phone numbers on the National Do Not Call Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

24. Encouraging people to hold telemarketers accountable on behalf of their

-6-
Class Action Complaint
Case No.

fellow Americans, the TCPA provides a private cause of action to persons who receive such calls. 47 U.S.C. § 227(c)(5).

**Factual Allegations**

25. PBR Management is a closely held company run in all respects by Roofeiim.

26. PBR Management offers marketing services, with a focus on internet based presence.

27. In order to sell these services, at Roofeiim's direction, PBR Management relies on telemarketing.

28. One of the telemarketing strategies used by Defendants involves the use of automated dialers and prerecorded messages to solicit potential customers to use PBR Management's services.

29. While such automated technology may save time and money for PBR Management's telemarketing efforts, it violates the privacy rights of the Plaintiff and putative classes.

<u>Calls to Plaintiff Marrero</u>

30. Plaintiff Marrero is a "person" as defined by 47 U.S.C. § 153(39).

31. Mr. Marrero's telephone number, (484) 213-XXXX, is registered to a cellular telephone service.

-7-
Class Action Complaint
Case No.

32. On May 28, 2020, PBR Management called Mr. Marrero on his cellular telephone with a pre-recorded message promoting its marketing services.

33. The pre-recorded messages also provided instructions regarding how to be connected to a live agent and/or be added to a do not call list.

34. Mr. Marrero's cellular telephone was registered on the National Do Not Call Registry on October 2, 2018.

35. Mr. Marrero's cellular telephone is his personal number used for housing purposes.

36. The purpose of the calls was to sell PBR Management's services to Mr. Marrero in exchange for a fee.

37. The use of a pre-recorded message is evidence that the calls were part of a campaign that made numerous phone calls in a short period of time.

38. Defendants' calls invaded Plaintiff's privacy and intruded upon his right to seclusion. The calls frustrated and upset Plaintiff by interrupting his daily life and wasting his time.

39. Defendants' calls intruded upon and occupied the capacity of Plaintiff's cellular phone and depleted the battery of Plaintiff's cellular phone. The calls temporarily seized and trespassed upon Plaintiff's use of his cellular phone, and caused him to divert attention away from other activities to address the calls.

40. Plaintiff did not consent to receive Defendants' calls prior to the receipt of the unsolicited conduct. To the contrary, Plaintiff has previously sued PBR Management for precisely the same type of unsolicited prerecorded telemarketing calls.

## Class Action Allegations

41. As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of classes of all other persons or entities similarly situated throughout the United States.

42. The Class of persons Plaintiff proposes to represent is tentatively defined as:

> <u>Robocall Class:</u> All persons within the United States to whom: (a) Defendants and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to their cellular or residential landline telephone number; (c) using an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

43. Excluded from the Class are counsel, the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

44. The Class as defined above is identifiable through phone records and phone number databases.

-9-
Class Action Complaint
Case No.

45. The potential Class's members number at least in the thousands. Individual joinder of these persons is impracticable.

46. Plaintiff Marrero is a member of the class.

47. There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

    a. Whether Defendants violated the TCPA by using automated calls to contact putative class members cellular telephones;

    b. Whether Defendants placed calls without obtaining the recipients' prior express invitation or permission for the call;

    c. Whether the Plaintiff and the class members are entitled to statutory damages because of Defendants' actions.

48. Plaintiff's claims are typical of the claims of class members.

49. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and counsel skilled and experienced in class actions, including TCPA class actions, represents him.

50. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question

concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

51. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

52. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for the entire Class's membership described above.

## LEGAL CLAIMS

### First Claim for Relief
### Violation of the TCPA's Automated Call provisions

53. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

54. Defendants' calls were made without the prior express consent, or the prior express written consent, of the called parties. 47 C.F.R. § 64.1200(a)(2); 47 C.F.R. § 64.1200(f)(8).

55. The Defendants violated the TCPA by (a) using a prerecorded voice to make calls to cellular and residential landline telephone numbers without the required consent, or (b) by the fact that others made those calls on its behalf. *See* 47 U.S.C. § 227(b).

-11-
Class Action Complaint
Case No.

56. The Defendants' violations were willful and/or knowing.

57. The TCPA also authorizes injunctive relief, and Plaintiff seeks injunctive relief prohibiting Defendants from calling telephone numbers using an automatic telephone dialing system or a pre-recorded voice, absent an emergency circumstance.

**Relief Sought**

WHEREFORE, for himself and all class members, Plaintiff requests the following relief:

A.  Injunctive relief prohibiting Defendants from calling telephone numbers using an automatic telephone dialing system or a pre-recorded voice, absent an emergency circumstance;

B.  Because of Defendants' violations of the TCPA, Plaintiff seeks for himself and the other putative Class members $500 in statutory damages per violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3).

C.  An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate classes the Court deems appropriate, finding that Plaintiff is proper representative of the Class, and

appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

  D. Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Dated: August 7, 2020    Respectfully submitted,

           **Jesaniel Marrero**, individually and on behalf of those similarly situated individuals

           By: */s/ Rachel E. Kaufman*
Rachel E. Kaufman, Esq.
rachel@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Attorney for Plaintiff and all others similarly situated*

Class Action Complaint
Case No.